All right, we are prepared to hear argument in Wood v. United States. Mr. DeMoor. Yes, may it please the court. As the court is aware, this is an appeal from the district court where the court dismissed our claim under the Federal Tort Claim Act on the basis of an alleged lack of subject matter jurisdiction. Following that court's decision, we brought a Rule 59e motion to reconsider and that also was denied. It's our position that Ms. Wood was, her claim here is something, strike that, it's our position that this claim revolves around a simple premises liability claim. It's not a matter of national security as the district court has found in this case. That is, Ms. Wood was a lawful invitee on the government's property and the government owed her a duty of care as it related to the mats next to the ship in the box where she jumped from and was injured. They failed to fasten the top pads securing the mats together. They failed to inspect the conditions of the mats. They failed to warn of the trap and they, in fact, affirmatively created the condition by failing to secure the mats, giving the impression I am getting into the, this is what happens in these FPCA cases if people jump to a question of whether there's negligence or not without asking the threshold question and the preliminary question about whether there's a discretionary function involved. You have to ask the functionality question before you start talking about, you know, the layout of a place or the construction of the place from where she jumped. Understood, Your Honor. Under the discretionary function exception, there's obviously, after you define the conduct at play here, and what I was trying, the point I was trying to make is the defined conduct by the court below made it something grander than what it really was. So I was trying to define the conduct, but as it relates to the discretionary function exception, there's two different prongs there, and one, whether any statute, regulation, or policy exists. And we can see at this point in the case, having sued the case, that we're unaware of any policy, regulation, or rule as the government alleges there is none. So we look at step two, whether or not the conduct implicates the public policy considerations. It's our position as a census. How could this not implicate a matter of military policy? And it's trying to coordinate and harmonize the needs of military training, on the one hand, with the desire to try to accommodate the needs of civilian law enforcement on the other. And so, you know, there's a question of what's going to compromise military training and what's not, and how much access can civilian law enforcement be granted, and what hours can they use the facility, and what's the supervision going to be on the facility, and whether some of that's going to interfere with the military's own use of the, the facility. And so what they're trying to do is strike a balance, and that would seem to me a matter of military policy. I don't see how it could be otherwise. Well, Your Honor, taking the broad argument that you just presented, then that would suggest that any time somebody's injured, a civilian's injured on a military base, he or she is precluded. No, it's not any time. These were training exercises. They were military training exercises, and these are civilian law enforcement training exercises. This is not a question of a civilian just walking on to the base. Right. They're two sets of training exercises. And I think that we identified a couple different cases in our brief. The Sestronado narrow case, holding for the general premises that discretionary function exception doesn't apply to routine torts on military facilities, but then you have the Nazaro case where the plaintiff was injured on an obstacle course in the military base. And in that case, the court held that that, the discretionary function exception did not apply, that the plaintiff had a claim under the Federal Tort Claim Act. Also, there was the Kelly case that we cited in our case where this court applied case law that the minor plaintiff injured in a Marine Corps training facility had the right to bring the claim. You know, you said that in the way the question was being, you suggested in the way the question was being posed that then every tort on a military base would be excluded. I'm just wondering if your argument doesn't make every tort included. No. As far as state law negligence, what kind of tort do you see that what we would call negligence that wouldn't be, that would be disallowed under the discretionary function exception? Well, any tort that involves a policy, military policy, social economic consideration. You're describing it. Give me an example of one. A tort that would not be covered. Right. Hard for you to imagine under your approach, isn't it? No. Because you see it that way. That's not a slight to you. Right. No, and I don't mean to suggest that everything that happens on the base... I know that, but you can't tell me an example of one that doesn't. Well, you're correct. At this moment, I can't. Maybe in rebuttal, when I have a minute to think about it, I will come back and... Because it strikes me, I just asked that not to trap you. I thought you might give me an answer, and I was just going to suggest that somebody else could say no. Because almost anything that happens, accident-wise, on a military base, you can make an argument for some kind of negligence law to apply, even if it's a trespasser. But you still, depending on the person's status and where they were, trespasser walking down the main road, you could say stepped in a pothole and broke his foot. But you have at least the obligation to make what's the thoroughfare open for people to walk on, because people who have permission will be walking on it. I mean, it strikes me that the issue becomes, and I thought you kind of put your finger on it when you said, I don't mean I agree with the critique, but you critiqued the district judge by going, he said this was, or she said this was a question of national security. But it may be the question, the point at which you define that question, and what this question is. The question of whether or not, in the specific training exercise, she was invited to participate, not the facts of this case necessarily. The government has some obligation under those facts to do something. But if it's a broader question of, do they have an obligation to allow anybody on the base, at all, civilians to participate in these exercises, that might be more discretionary function, that they don't have to allow anybody on at all. But the fact, as they're trying to balance and let civilian forces use it as well, that might well decide discretionary function of whether or not they let people on or how they put together their training sites. That might be discretionary function. It seems to me it's kind of a tough battle for you to make in light of a lot of discretionary function law. And I agree, Your Honor. However, the discretionary function, the fact remains that the military allowed the Norfolk Sheriff's Department to come onto the base to do its training. What our argument is, once they're there. Oh, no, I know what your argument is. But the point is, and I think it goes to Judge Wilkinson's issue, but you have to decide what the first question is. And that is, in this case, maybe he didn't frame it this way, I might would say, in the decision to allow her to come on the base. They don't have to let her come on the base, do they? No, they don't have to. And so that's the discretionary function of, if they decide to let her come, how then must the site be in their minds for them to even invite people to come on? That might then impact on where they spend money on the base, what they do with limited funds. It seems to me that's the broader discretionary function. And, Judge, I think that goes back to my point before where you kind of flipped it around on me and said, well, wait a minute, isn't every tour on the base the case? If you're making the decision or saying the discretionary function lies in whether or not to invite the public onto the base, then under that analysis. Even on a more particularized situation where the base that is safety concerns about how the base is maintained. Right. Has falls right within the heartland of cases that have decided safety decisions. When you decide as a policy matter whether to provide maintenance, inspection, and warning, which are the three things you're concluding here. Those are discretionary decisions that are made on the basis of the need for the safety, the expense of the safety, the government fisc. The reason I focus this is it's hard to distinguish your case from Baum, Smith, and Bowman. All these cases where the government was accused of not putting up a guardrail and not putting up a warning. And those were discretionary decisions whether to provide those safety factors as a matter of safety policy and the spending fisc. And so it seems to me when there's a decision-making function by the government in deciding whether to provide these safety mechanisms, you're going to have, according to case law, discretion. Whereas if you have just conduct like driving the truck negligently and running somebody down, those are typically covered. And in this case, it seems to me I can't find the distinction between take Baum or Bowman. How is this different from those two cases? Well, Judge, what I would say to you in response to that is this case is more akin to Nazaro and Kelly where people were injured on the base as opposed to. Well, why don't you address the ones I asked about? All right. Well, in the Baum case with the guardrail, the court held that it was a matter of financial decision, a discretion not to maintain the guardrails. Not to maintain them, not to put them up, whether to put up warning signs, all discretionary decisions. Right. And I think where this differentiates in this case is you have two mats side by side with a top mat there. The fact that they did not buckle it in to secure it so that the mats wouldn't part. Well, your argument seems to be that any time something can be posed as a matter of safety, that it falls outside of the discretionary function exception. And that's just not what those cases that my colleague read to you, they don't stand for that proposition. They stand for the proposition that even where something is a matter of safety and even where negligence in providing a safe environment can be litigated in a normal context, if it involves a discretionary decision and a policy, in this case a military policy, it falls within that exception. And the difficulty that I have with your case is that the complaint actually frames the case in terms of a discretionary decision involving military policy that has to be made. And when you read the complaint, it is that the military failed to plan, develop, implement, or otherwise place into effect adequate and proper guidelines, systems, rules, regulations, checklists intended to ensure the safety of lawful invitees. Well, that statement is simply a contention that the military didn't exercise its discretion in the way you wanted it to. It doesn't identify any mandate that the military violated. It involves the fact that you don't agree with the military's execution of its policies and with the military's exercise of its discretion. And you want more adequate guidelines and you want more checklists and procedures. You want something mandatory. But that isn't there. It's just not there. What's there is a grant of discretion. Well, Judge, I would say that the other cases cited all have financial implications. And in this case, as it relates to this tort, there's no financial. It doesn't have to have a financial implication. It has to have a military policy implication. And what, you know, this lies right at the heart of, you know, how they're going to accommodate military and civilian training needs. Those are policy questions. And the exercises here weren't even conducted by the military. They were conducted by a range safety officer who is a member of the Norfolk Sheriff's Department. And, you know, it would seem to me that the entity conducting the exercise would have the lion's share of the control in what kind of things were safe training procedures and what kind weren't. But come back to the basic point. All of these cases, and I've sat in on so many of them, and people jump immediately to the question of whether something's safe or whether it's not safe. And that's your typical civilian tort. But it ignores what Kearns says is that independent jurisdictional threshold question. That's the problem. Well, yes, Your Honor, and I think as it relates to the Kearns case and why we believe the district court misapplied that was that, you know, there's the three different analysis, the facial challenge, the factual challenge, and the one that's intertwined. And we're saying that the facts of this case, the allegations, the negligence, are so intertwined with the subject matter jurisdiction that discovery must be had. Why are they? You're alleging the failure to maintain, to inspect, and to warn. Right. It seems to me those criteria have been handled in many, many cases. Ones that I cited to you and more. Smith case, Bowman failing to maintain, well, Baum, Williams. These cases all involve the failure of a government to act, make a decision. And the implications are various, whether we spend the money here, whether we provide the safety when we don't really have to. These are decisions. And any case where there is a decision involved that affects some government policy, and the FISC is one, public safety is another, these have all been excluded from the Tort Claims Act. And I think your allegations, taken as alleged, are hard to distinguish from those cases. And I've asked you to try to. I mean, I don't know what your answer was on Baum. Why wasn't Baum a failure to maintain? That was a rotten guardrail. Right. And failure to warn. And somebody gets injured as a result of that. Now, is that different from here? You're saying here they failed to maintain the mats, quite apart from the fact that the mats were backup. They were not jumping mats. The function of that ship box, ship in the box or whatever they called it, was to duplicate the process of boarding a ship with a harness going up. And the mats were backups. But quite apart from that. We don't need to get into that. Your allegation is that having that structure there without a warning is negligent. And that could be a decision they decided to make because, from their point of view, they spend money for something that's totally unnecessary or necessary, whatever their decision is. But that's the heart of the discretionary function. Well, and I'm not sure that it's the discretionary function to spend money or not spend money. It's that you have these mats here. Well, sure it is. That's what these cases talk about. Right. And Your Honor asked about the Baum case and the other cases. I would say that we've cited several cases in which the garden variety tort claims, such as we've pled here, are applicable. And I think it's more akin to those cases. Of course, the Federal Tort Claims Act doesn't cover all garden variety torts. Understood. It governs certain types of torts. None of the deliberate torts are covered. There are no jury trials. There's no punitive damages. There's no discretionary torts involving decision-making, involving policy. There are torts. If there's a mandate, if you had a regulation that says you have to post a sign at that ship box and they didn't do it, the cases have held, they've got to do it because the government directed them to do it and created the duty. But if it's discretionary and they can make that judgment call as to whether to provide that safety for civilians invited onto a military base, and they chose not to, we're not going to second-guess that, are we? I would like you to on the basis that this case is not about the discretion of letting them on the base or not letting them on the base. Well, no. It's addressing how you handle people that are invited on a base with respect to safety. Right. And so they basically decided you're at your own risk because we're not going to spend money. Those are legitimate policy decisions. And that's what you're challenging, aren't you? Yes. I'm not challenging the fact that the military here said you're at your own risk. It's that they created a defect here by not securing the mats and gave every indication that the mats were there for the jumping off of the ship in the box. And in Baum, they created defect by not maintaining the guardrail, right? Well, in Baum. And in Bowman, they created a defect by not putting up a guardrail where one was necessary. Right. But in those cases, you're talking about miles of guardrails and roads and policy implications and financial implications. Here, it's simply fastening two mats together by a top hat. That's where we draw the distinction. Thank you, Counsel. Thank you. Mr. Porter. Good morning, Your Honors. Judge Wilkinson, to get to your point, I believe my colleague, my adversary's argument really started with, came back in the middle, and ended with the same question, trying to bring this thing back to the specific negligence that was involved in this particular case, the specific acts of what did you do with these mats. Judge Niemeyer. The problem is so often the plaintiffs in these cases try to decide these things and frame these things as an ordinary tort, an ordinary negligence case, like just two cars meeting in the road. And the FTCA says that's what you can't do. Well, that's precisely the situation. That's precisely what we think BOM stands for. We think this case is like the BOM case. In BOM, of course, the allegation is the car hits the guardrail post, it gives way, and the car goes off the bridge. Well, the specific argument was you shouldn't have made that guardrail post out of cast iron. You should have made it out of something else. That's the specific act of negligence. But in BOM, the court says, well, no, when you get to this second prong, you've got to evaluate in an objective and general sense. And the question is not what was this guardrail post made out of, which was the allegation of negligence. The question is, is there discretion inherent in the choice of materials? In the BOM case that you've just been talking about, it stands, at least in my mind, for this proposition, the fact that an allegation of safety or lack of safety is involved doesn't on that account alone move it outside the discretionary function exception. And that is that safety is not some talismanic allegation that can be pleaded and simply eradicate the discretionary function exception. That's what BOM stands for. Well, actually, that is correct. And I believe there's a specific quote in our brief. I believe it's the Shanksky case out of the Sixth Circuit, which said that there is no general safety exception to the discretionary function exception. And that is the case. There is no general safety exception. Every discretionary function – So I've stated even the opposite, which was safety decisions are discretionary decisions. You can't make everything 100 percent safe. And the decision whether to provide safety mechanisms by a government is a discretionary function. And it seems to me these cases all stand for the proposition that if you're challenging the safety, the maintenance of a safe place, those cases the government doesn't want to be sued. Now, if you're trying to challenge a situation where somebody conducts himself in a negligent manner, he drives too fast and hits a child or hits another vehicle or something of that character, that's the typical case where the government has chose to be suable. But it seems to me it involves decision-making that implicates ultimately some governmental policy, even on a smaller level. It doesn't have to affect thousands of people or national security. It just basically has to be a policy of the government that's implicated. Well, and this case is that case. This is a very different case than the auto accident or the grape on the commissary floor. There's a decision-making involved. They're challenging the decision-making of how to provide a safe mechanism for invitees. And, well, in particular, for law enforcement activities that the military takes no role in. They have no role in the planning, the development of the training activities they're going to engage in. In fact, the specific policies – Is it a training question or is it a premises liability question in your view? Well, it's fundamentally a premises liability case. The negligence is a premises liability case. Do you think all premises liability cases fall within discretionary function? No. Why not? What one wouldn't? A slip and fall on a commissary would be a premises liability case that would not fall within a discretionary function. What about – well, why not? Well, in that case, you have more of a broader invitation to anybody who – Why would that be a discretion about how often you mop the floors? How you use the government money to have a – That could come back to the more as – and I believe it's in the Baum case talks about every maintenance question. No, but why doesn't that involve the FISC? Well, it does. What the government decides how often to spend money to make the floors safe in a slip and fall. Why wouldn't that fall within discretionary function? To a certain extent, it is a discretion, but would it be a decision that is the type that the discretionary function was meant to protect? That's just a circular answer. I'm asking you your answer to it. Why isn't the choice of how often to mop the floors and whether or not to have a custodian standing there with the mop on every aisle at the commissary, why isn't that a safety issue involving the FISC? It is a safety issue involving the FISC, but when you get to the second prong, you do have to analyze whether that's the type of decision that the discretionary function was meant to protect. This case is very different. Why are you limiting the type of decision? It seems to me it just has to be a judgment call involving governmental policy. And two policies are involved in Judge Shedd's hypothetical. One is the FISC and the other is public safety. And the government can decide different levels of public safety and it can decide different levels of FISC spending. It seems to me when there's a decision that gives the government alternative courses to take, you're now getting into a discretion. And I don't know the answer to the question that he asked you was whether all premises liability fall in discretion, but it looks like it could. The government may choose that all our premises cannot be, you cannot sue on negligent premises if the decision is based on how frequently we inspect, how frequently we mop, how many people we use, that type of thing. Now if it's dependent on something else, maybe. I don't know what all the hypotheticals would be, but it seems to me discretion, inherent in the word discretion, is making a judgment between two choices. And it involves policy. And in this particular case, the discretion involves not just the economic, the financial, but the military considerations. Well, the discretion is abundant here, but Judge Shedd raised a very interesting hypothetical, and the response to it, it wouldn't be, you just said, no, it wouldn't fall within the discretionary function exception, but wouldn't the question of whether it fell within the discretionary function exception or not depend on whether there was some mandatory directive as to how to maintain commissary aisles? Well, that would certainly be the first prong. And if there was some sort of policy at place. Yeah, but absent that mandatory, you still get back to the basic question I asked you. Of course, that would control it, but that's not present. That's why I kind of wondered at the level at which you phrased the question, or one phrased the question, that if it, honestly, I know we're talking about safety here, but that might be even a smaller question. I just ask for purposes of my edification, why isn't the broader question the discretion of access to the military base? Well, actually, I think if you look back at our briefs in the lower court, we contend that that's part of the picture. It's the access question. You lost your head. That the statute says you may allow people on the base, or you may allow civilian law enforcement. That's why if it's that broader, it didn't have to be, I think, for you to prevail in this case, but if it's the broader question of access to the base, then that does seem to implicate the possibility that premises liability issues do fall, the opposite of what you said, that maybe they do fall, and pretty much all fall within discretionary function. I'm not saying we have to decide that today necessarily. I think that would be a broader question. Yes. In this particular case, however, the statutes specifically relate to allowing civilian law enforcement on for these purposes, specifically relate to the use of personnel in these types of situations. So in this case, you would frame it not as, you mentioned some of that in this case, but you don't want to frame it that way. You don't want to frame it as civilian access to training facilities. That's how you would frame it. That's correct. As we framed it, are the decisions relating to inspection, maintenance, or warnings with respect to military training facilities that are used by civilian law enforcement activities. We framed that question in a way that's kind of hard to answer, other than you want it to be answered. Well, we would hope so, Your Honor. Yes. But in this particular case, you do have the statutes that inform the access decision, the statutes that inform the personnel use decisions, the DOD directives, the instructions, and all the way down to even the risk management policies that dictate how risk management occurs on the basis, and specifically the policy to allow that to be transferred to the range safety officers. I don't think we have any more questions. We have no further questions. Thank you, Your Honor. Appreciate the time. Mr. DeMoor, you have some rebuttal time. Your Honor, I think I overextended my time in the first instance, so unless the Court has some questions, I'm going to defer. Okay. Thank you. Thank you. We'll come down and reach counsel and then take a brief recess.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Dennis W. Shedd